*Trendon Washington v. State of Maryland*, No. 5, September Term, 2016, Opinion by Adkins, J.

**MARYLAND CODE (2001, 2008 REPL. VOL., 2016 SUPP.), § 8-201 OF THE CRIMINAL PROCEDURE ARTICLE ("CP") — STANDING TO FILE PETITION**: Conspiracy to commit murder is not a petition-eligible offense under Maryland's postconviction DNA testing statute, Maryland Code (2001, 2008 Repl. Vol., 2016 Supp.), § 8-201 of the Criminal Procedure Article.

**MARYLAND CODE (2001, 2008 REPL. VOL., 2016 SUPP.), § 8-201 OF THE CRIMINAL PROCEDURE ARTICLE ("CP") — CONSTITUTIONAL LAW — DUE PROCESS – POSTCONVICTION RELIEF:** Maryland's postconviction DNA testing statute, Maryland Code (2001, 2008 Repl. Vol., 2016 Supp.), § 8-201 of the Criminal Procedure Article, provides sufficient procedural due process such that it does not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution or Article 24 of the Maryland Declaration of Rights.

**MARYLAND CODE (2001, 2008 REPL. VOL., 2016 SUPP.), § 8-201 OF THE CRIMINAL PROCEDURE ARTICLE ("CP") — CONSTITUTIONAL LAW — EQUAL PROTECTION:** Maryland's postconviction DNA testing statute, Maryland Code (2001, 2008 Repl. Vol., 2016 Supp.), § 8-201 of the Criminal Procedure Article, does not violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution or Article 24 of the Maryland Declaration of Rights because individuals convicted of conspiracy to commit murder are not similarly situated to individuals convicted of first-degree and attempted first-degree murder for the purpose of the statute. Even if persons convicted of conspiracy were similarly situated, the State has a rational basis for distinguishing between these groups.

Circuit Court for Baltimore City
Case No.: 107164029
Argued: September 1, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 5

September Term, 2016

TRENDON WASHINGTON

v.

STATE OF MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Filed: November 1, 2016

Appellant Trendon Washington is serving a life sentence for conspiracy to commit murder. He filed a petition for postconviction DNA testing pursuant to Maryland Code (2001, 2008 Repl. Vol., 2016 Supp.), § 8-201 of the Criminal Procedure Article ("CP").[1] The postconviction court dismissed his petition because he was not convicted of a crime of violence and is therefore not eligible for postconviction relief under the statute. We affirm the postconviction court's dismissal of Washington's petition, and hold that a person convicted of conspiracy to commit murder is not eligible to file a petition for postconviction DNA testing under CP § 8-201(b). We further hold that Maryland's postconviction DNA testing statute does not violate due process or equal protection rights accorded by the U.S. Constitution or the Maryland Declaration of Rights.

## FACTS AND LEGAL PROCEEDINGS

Washington was charged with conspiracy to commit murder, first-degree murder, second-degree murder, and handgun offenses in connection with the death of Ricardo Paige. On March 20, 2007, Ricardo Paige was found dead at 502 East 43rd Street in Baltimore, Maryland. He had been shot six times. The police recovered two .45 caliber shell casings from the scene along with a bloody broom and dust pan that appeared to have been used to sweep up spent shell casings. The broom and the dust pan tested positive for blood, but the items were not tested for DNA. On January 21, 2009, a jury convicted

---

[1] Although Washington filed his petition two months before it went into effect, at the State's suggestion, and without objection by Washington, the postconviction court applied the October 1, 2015 version of the statute. The bulk of Washington's arguments are based on the 2015 version of the statute, but, as addressed *infra*, he advances one argument based on the earlier version.

Washington of conspiracy to commit murder but could not reach a unanimous verdict on the remaining charges. Washington was sentenced to life imprisonment.

On August 6, 2015, Washington filed a petition, *pro se,* in the Circuit Court for Baltimore City requesting postconviction DNA testing of the broom and dust pan. The Circuit Court dismissed the petition without a hearing on December 14, 2015 because it concluded that Washington did not have standing to file a petition under CP § 8-201(b).[2] The court reasoned that in order to qualify for relief under this statute, a person must be convicted of a crime of violence under Maryland Code (1957, 2012 Repl. Vol.), § 14-101 of the Criminal Law Article ("CR"). Because Washington had been convicted only of conspiracy to commit murder, which is not defined as a crime of violence in CR § 14-101, he lacked standing to pursue the remedies under the statute.

Washington noted a direct appeal to this Court pursuant to CP § 8-201(k)(6). *Arrington v. State*, 411 Md. 524, 544 (2009). He presented the following questions for our review:

> 1. Whether a person convicted of conspiracy to commit first degree murder and sentenced to incarceration for life is eligible to file a petition for postconviction DNA testing of scientific identification evidence pursuant to § 8-201 of the Criminal Procedure Article?
>
> 2. Whether a person convicted of conspiracy to murder and sentenced to incarceration for life has a residual, core liberty interest protected by the [Due Process Clause] of the Fourteenth Amendment and Article 24 that in limited

---

[2] Maryland Rule 4-709 governs whether a hearing is required. It provides, in relevant part: "The court shall deny the petition without a hearing if it finds that: (A) the petitioner has no standing to request DNA testing[.]" Md. Rule 4-709(b)(1) (2016).

circumstances gives rise to a *procedural right* to access forensic evidence the State previously produced at trial?

3. Whether § 8-201 of the Criminal Procedure Article, which permits only those convicted of murder to petition for postconviction DNA testing, violates the [Equal Protection Clause] of the Fourteenth Amendment and Article 24 as applied to a person sentenced to life for conspiracy to murder?

(Emphasis in original.)

## STANDARD OF REVIEW

In this appeal we are tasked with interpreting Maryland's postconviction DNA testing statute to determine if individuals convicted of conspiracy to commit murder are eligible to file a petition for testing. This is a question of law, which we review without deference to the postconviction court. *Arrington*, 411 Md. at 551 (citation omitted).

## DISCUSSION

Maryland's postconviction DNA testing statute, CP § 8-201, grants individuals convicted of certain crimes the right to file a petition requesting postconviction DNA testing. CP § 8-201(b). In 2015, the General Assembly amended the statute to enlarge the class of individuals eligible to file a petition to all those convicted of crimes of violence defined in CR § 14-101.[3] Previously, only individuals convicted of first-degree murder, second-degree murder, manslaughter, rape in the first and second degree, and first- and

---

[3] The 2015 amendment expanded the list of petition-eligible crimes from 7 to 39. *Compare* Md. Code (2001, 2008 Repl. Vol.), § 8-201(b) of the Criminal Procedure Article ("CP"), *with* Md. Code (2001, 2008 Repl. Vol., 2016 Supp.), CP § 8-201(b).

3

second-degree sex offense were eligible to file such a petition. Md. Code (2001, 2008 Repl. Vol.), CP § 8-201(b).

At issue is whether individuals convicted of conspiracy to commit murder are eligible to file a petition for postconviction DNA testing under the recently-expanded list of petition-eligible crimes. Washington argues that, as an individual convicted of conspiracy to commit murder and sentenced to life imprisonment, he is eligible to file a petition based upon a reading of CP § 8-201(b) in the context of the larger statutory scheme and purpose. Washington also asserts that denying him access to DNA evidence for testing violates his due process rights under the U.S. Constitution and the Maryland Declaration of Rights because it "constitutes a deprivation of his residual, core liberty interest." Finally, Washington contends that denying him access to DNA evidence violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and the Maryland Declaration of Rights because the State has no rational basis for distinguishing him, an individual sentenced to life imprisonment, from individuals convicted of first-degree murder or attempted first-degree murder who received the same sentence.

To the contrary, the State urges us to affirm the dismissal of Washington's petition for lack of standing. Postconviction petitions for DNA testing of scientific identification evidence, it says, are authorized by CP § 8-201(b), and are limited to those convicted of a crime of violence as defined in CR § 14-101. The State points out that conspiracy to commit murder is simply not listed as a crime of violence in CR § 14-101. Therefore, Washington, who was convicted of conspiracy to commit murder, lacks standing to file a petition. As to due process, the State avers that the procedures Maryland has in place for

4

such testing go above and beyond the constitutional procedural requirements. Finally, the State asserts that denying access to postconviction DNA testing is not a violation of the Equal Protection Clause of the U.S. Constitution or Article 24 of the Maryland Declaration of Rights because Washington is not similarly situated to individuals convicted of consummated crimes of violence and, even if he is, the State has a rational basis for creating this distinction.

## Eligibility to File a Petition Under CP § 8-201

The current text of CP § 8-201(b) provides:

> (b) Notwithstanding any other law governing postconviction relief, a person who is **convicted of a crime of violence under § 14-101 of the Criminal Law Article** may file a petition:
>
> (1) for DNA testing of scientific identification evidence that the State possesses that is related to the judgment of conviction; or
>
> (2) for a search by a law enforcement agency of a law enforcement data base or log for the purpose of identifying the source of physical evidence used for DNA testing.

(Emphasis added.)

Section 14-101 of the Criminal Law Article, which CP § 8-201(b) incorporates to define those eligible to file DNA testing petitions, lists crimes of violence subject to mandatory minimum sentencing. Relevant for our purposes, CR §§ 14-101(a)(7) and (17) define murder and attempted murder as crimes of violence.[4]

---

[4] Maryland Code (1957, 2012 Repl. Vol.), § 14-101(a) of the Criminal Law Article ("CR") provides:

5

(a) In this section, "crime of violence" means:

(1) abduction;

(2) arson in the first degree;

(3) kidnapping;

(4) manslaughter, except involuntary manslaughter;

(5) mayhem;

(6) maiming, as previously proscribed under former Article 27, §§ 385 and 386 of the Code;

(7) murder;

(8) rape;

(9) robbery under § 3-402 or § 3-403 of this article;

(10) carjacking;

(11) armed carjacking;

(12) sexual offense in the first degree;

(13) sexual offense in the second degree;

(14) use of a handgun in the commission of a felony or other crime of violence;

(15) child abuse in the first degree under § 3-601 of this article;

(16) sexual abuse of a minor under § 3-602 of this article if:

(i) the victim is under the age of 13 years and the offender is an adult at the time of the offense; and

(ii) the offense involved:

1. vaginal intercourse, as defined in § 3-301 of this article;

2. a sexual act, as defined in § 3-301 of this article;

3. an act in which a part of the offender's body penetrates, however slightly, into the victim's genital opening or anus; or

4. the intentional touching, not through the clothing, of the victim's or the offender's genital, anal, or other intimate area for sexual arousal, gratification, or abuse;

(17) an attempt to commit any of the crimes described in items (1) through (16) of this subsection;

(18) continuing course of conduct with a child under § 3-315 of this article;

(19) assault in the first degree;

(20) assault with intent to murder;

6

We employ Maryland's long-settled rules of statutory construction to guide our interpretation of CP § 8-201. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Blake v. State*, 395 Md. 213, 224 (2006). First, we examine the plain language of the statute to ascertain the Legislature's intent. *Id.* When examining the plain language, "[w]e neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with 'forced or subtle interpretations' that limit or extend its application." *Willis v. Montgomery Cty.*, 415 Md. 523, 537 (2010) (citation omitted). We "examine the language 'within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.'" *Id.* (citation omitted). To confirm our plain language reading, we may also consider a statute's legislative history to determine legislative intent. *Moore v. State*, 388 Md. 623, 635 n.4 (2005) (collecting cases). If the language of the statute is clear and unambiguous, we presume the Legislature meant what it said. *Willis*, 415 Md. at 536. If the language of the statute is ambiguous, we seek to ascertain the Legislature's intent from the legislative history, case law, and statutory purpose to resolve the ambiguity. *Blake*, 395 Md. at 224.

As the State argues, CP § 8-201(b) permits only "a person who is convicted of a crime of violence under § 14-101 of the Criminal Law Article" to file a petition.

---

(21) assault with intent to rape;
(22) assault with intent to rob;
(23) assault with intent to commit a sexual offense in the first degree; and
(24) assault with intent to commit a sexual offense in the second degree.

7

Examination of the language of CR § 14-101 confirms this reading of CP § 8-201(b). Conspiracy has never been included on the CR § 14-101 list. This omission does not appear to be an oversight, moreover, considering that CR § 14-101 does expressly include one type of inchoate crime—attempt. CR § 14-101(a) ("In this section, 'crime of violence' means: . . . (17) **an attempt** to commit any of the crimes described in items (1) through (16) of this subsection[.]" (emphasis added)).

This reading of CP § 8-201(b) is further supported by examining other statutes that incorporate the CR § 14-101 definition of crimes of violence and expressly add "conspiracy" to commit those crimes as a separate offense. For example, Maryland's witness-tampering statutes impose a criminal penalty for inducing false testimony or retaliating against a witness who is offering testimony related to "the commission of a crime of violence as defined in § 14-101 of this article, **or a conspiracy or solicitation to commit** such a crime." Md. Code (1957, 2012 Repl. Vol.), CR §§ 9-302(c)(2), 9-305(c)(2) (emphasis added); Md. Code (1957, 2012 Repl. Vol., 2016 Supp.), CR § 9-303(c)(2) (emphasis added). Similarly, Maryland Code (1977, 2013 Repl. Vol.), § 10-407(c)(2)(iii) of the Courts and Judicial Proceedings Article ("CJP"), provides an exception to Maryland's statute criminalizing wiretapping[5] if, "All parties to the communication were **co-conspirators in a crime of violence as defined in [CR] § 14-101**." (Emphasis added.) These provisions show that the Legislature knows how to include conspiracy to commit crimes of violence in statutory provisions when it so desires. The Legislature did not do

---

[5] Md. Code (1957, 2013 Repl. Vol., 2016 Supp.), § 10-402 Courts and Judicial Proceedings Article ("CJP").

so in CP § 8-201(b). *See Stoddard v. State*, 395 Md. 653, 661 (2006) ("[T]he Legislature is presumed to have meant what it said and said what it meant." (citation omitted)). Consequently, based on the plain and unambiguous language of CP § 8-201(b), we conclude that the Legislature did not intend for individuals convicted of conspiracy to commit the crimes of violence enumerated in CR § 14-101 to have standing to file a petition for postconviction DNA testing.

Although Washington concedes that CP § 8-201(b) is unambiguous and by its plain language does not include conspiracy crimes, he urges us to find ambiguity in the broader statutory scheme. In support of his argument, Washington points to CP § 8-201(j), which, he contends, imposes a duty on the State to preserve evidence for DNA testing for the duration of his life sentence. He argues that this "duty to preserve controls the ability to test." Washington also invokes CP § 8-201's legislative history and remedial purpose, which, he argues, demonstrate the General Assembly's commitment to expanding access to postconviction DNA testing and support his broad reading of CP § 8-201(b). He contends that in light of the State's duty to preserve the DNA evidence in his case and the remedial purpose of the statute, denying him access to the evidence for testing produces an absurd result. We disagree.

Even if we accepted Washington's argument that a duty to preserve triggers a right to petition, which we do not, no CP § 8-201 duty to preserve DNA evidence postconviction exists in this case whether CP § 8-201(j) is read in isolation or as part of the statutory scheme. CP § 8-201(j), which governs the State's duty to preserve DNA evidence postconviction, requires the State to preserve "scientific identification

9

evidence . . . secured in connection with a violation of § 2-201, § 2-204, § 2-207, or § 3-303 through § 3-306 of the Criminal Law Article." These sections are, respectively, the statutory provisions defining first-degree murder, second-degree murder, manslaughter, rape in the first and second degree, and first- and second-degree sex offense. Conspiracy is not included.

At oral argument, Washington argued that the phrase "in connection with a violation of [CR] § 2-201" in CP § 8-201(j) encompasses conspiracy to commit murder because it requires the State to preserve DNA evidence used in the investigation and prosecution of his underlying first-degree murder charge.[6] In essence, Washington argues that "violation" means "charged," and his first-degree murder charge triggered the State's CP § 8-201 duty to preserve DNA evidence in his case. And this duty to preserve, Washington contends, grants him a corresponding ability to test the evidence. Washington's argument misses the mark.

The term "violation" does not include merely being charged with a crime. A "violation" of a statutory provision in this context quite plainly means taking action

---

[6] In his briefs, Washington advanced an argument based on the language of CP § 8-201(b) prior to the 2015 amendment, which defined the eligible class of persons as including those "convicted of a violation of § 2-201 . . . ." (murder in the first degree). He argued that because the *mens rea* and maximum allowable sentence for first-degree murder are the same as conspiracy to commit murder, CP § 8-201(b) encompassed conspiracy to commit murder. This argument fails for two reasons. As we said above, "violation" plainly means failure to comply with a statute's provisions. So, being charged with murder, but not convicted, did not trigger the right to petition for relief under CP § 8-201. Second, as with the current version of CP § 8-201(b), the Legislature failed to include "conspiracy" in the earlier version of CP § 8-201(b), and we assume such omission was intentional.

prohibited by that statute.[7]  Thus, to give rise to CP § 8-201's duty to preserve, Washington

had to be convicted of murder.  CR § 2-201 defines acts that constitute murder in the first

degree, deems the crime a felony, and prescribes penalties for violating the provision—life

imprisonment or life without the possibility of parole.[8]  CR § 2-201 makes no mention of

---

[7] Black's Law Dictionary defines "violation" as "[a]n infraction or breach of the law." *Violation*, Black's Law Dictionary (10th ed. 2014).

[8] Maryland Code, (1957, 2012 Repl. Vol., 2016 Supp.), § 2-201 of the Criminal Law Article provides:

> (a) A murder is in the first degree if it is:
> > (1) a deliberate, premeditated, and willful killing;
> > (2) committed by lying in wait;
> > (3) committed by poison; or
> > (4) committed in the perpetration of or an attempt to perpetrate:
> > > (i) arson in the first degree;
> > > (ii) burning a barn, stable, tobacco house, warehouse, or other outbuilding that:
> > > > 1. is not parcel to a dwelling; and
> > > > 2. contains cattle, goods, wares, merchandise, horses, grain, hay, or tobacco;
> > > (iii) burglary in the first, second, or third degree;
> > > (iv) carjacking or armed carjacking;
> > > (v) escape in the first degree from a State correctional facility or a local correctional facility;
> > > (vi) kidnapping under § 3-502 or § 3-503(a)(2) of this article;
> > > (vii) mayhem;
> > > (viii) rape;
> > > (ix) robbery under § 3-402 or § 3-403 of this article;
> > > (x) sexual offense in the first or second degree;
> > > (xi) sodomy; or
> > > (xii) a violation of § 4-503 of this article concerning destructive devices.

11

conspiracy to commit murder, which, by contrast, is a common-law misdemeanor that is not defined by statute.[9] *Johnson v. State*, 362 Md. 525, 528 (2001). Washington was only convicted of conspiracy to commit murder, not of murder itself. Thus, the State's duty to preserve DNA evidence postconviction under CP § 8-201(j) was never implicated.

Washington also points to CP § 8-201(a)(5)(i)'s definition of the term, "scientific identification evidence," to support his argument. Scientific identification evidence is defined, in relevant part, as evidence that "is related to an investigation or prosecution that resulted in a judgment of conviction." CP § 8-201(a)(5)(i). Washington emphasizes the phrase "related to an investigation and prosecution" of first-degree murder, which, he asserts, creates a pre-conviction duty to preserve. Certainly, the State must preserve DNA evidence while the investigation and trial are pending—some of it may be exculpatory. But CP § 8-201(a)(5)(i), which kicks in upon conviction, does not accord Washington the relief he seeks. As indicated above, the State had no duty under this section to preserve DNA evidence after the trial because the jury failed to convict him of murder. Moreover,

---

(b) *Penalty.* — (1) A person who commits a murder in the first degree is guilty of a felony and on conviction shall be sentenced to:
>    (i) imprisonment for life without the possibility of parole; or
>    (ii) imprisonment for life.
>  (2) Unless a sentence of imprisonment for life without the possibility of parole is imposed in compliance with § 2-203 of this subtitle and § 2-304 of this title, the sentence shall be imprisonment for life.

[9] The Legislature has limited by statute the maximum punishment for a conspiracy crime to "the maximum punishment for the crime that the person conspired to commit." Md. Code (1957, 2008 Repl. Vol.), CR § 1-202.

12

this definition of scientific identification evidence merely reiterates CP § 8-201(j)'s requirement of a conviction before the State has a duty to preserve. CP § 8-201(j) by its plain language requires the State to preserve all DNA evidence in cases where there has been a first-degree murder conviction, not a conspiracy conviction.

Although the postconviction DNA testing statute is remedial, *Gregg v. State*, 409 Md. 698, 715 (2009), and must be construed liberally, this does not grant us license to redraft the statute "beyond its clear meaning and the legislature's intent." *Emps.' Ret. Sys. of City of Balt. v. Dorsey*, 430 Md. 100, 113 (2013) (citation omitted). Therefore, we do not "add provisions or tailor existing ones to change the mandatory nature of the statute's language in order to favor the [petitioner]." *Id.* (citation omitted). As discussed previously, the Legislature knows how to draft legislation that includes conspiracy along with statutory offenses. It has declined to do so here.[10]

## Due Process Clause

Washington argues that he has a procedural due process right to test the evidence used to convict him for DNA under both the Fourteenth Amendment of the U.S.

---

[10] Washington asserted for the first time at oral argument that he should have access to the DNA evidence the State has the duty to preserve in his co-defendant's case. In Washington's case, his co-defendant was convicted of first-degree murder and conspiracy to commit murder, but Washington was only convicted of conspiracy to commit murder. Washington argues, in essence, that the State's duty to preserve DNA evidence in his co-defendant's case grants him the right to petition for postconviction testing of this evidence in his own case. We disagree. The mere obligation to preserve evidence relating to a murder conviction of another person does not, without legislative authorization, entitle Washington to petition under CP § 8-201(b). He has no statutory or common law right to such relief, and, as we explain *infra*, no constitutional right.

Constitution and Article 24 of the Maryland Declaration of Rights.[11] Under the Fourteenth Amendment, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This requires states to follow certain procedures before restricting or taking away an individual's liberty interest. *Dist. Atty's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67 (2009). The Supreme Court has recognized a limited liberty interest in postconviction relief when a state provides procedures for convicted defendants to demonstrate their innocence with new evidence. *Id.* at 68. Relying on *Osborne*, Washington argues that by denying him access to postconviction DNA testing, the State has unconstitutionally denied him the opportunity to pursue postconviction relief under Maryland law.

The Supreme Court has held that criminal defendants who have been convicted have "only a limited interest in postconviction relief" based on newly discovered evidence because they have already received a fair trial. *Id.* at 69. Once the government has proven its case beyond a reasonable doubt, "the criminal defendant has been constitutionally deprived of his liberty." *Id.* (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). "The State accordingly has more flexibility in deciding what procedures are

---

[11] Washington suggests that he is also asserting a substantive due process right to postconviction DNA testing. The Supreme Court has squarely rejected that argument. *Dist. Atty's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009). In *Osborne*, the Court noted that "[e]stablishing a freestanding right to access DNA evidence for testing would force [courts] to act as policymakers," and concluded that determining who can access DNA evidence postconviction is a decision best left to the states. *Id.* at 73–74. Notably, the Court expressed concern that if it recognized a substantive due process right to postconviction DNA testing it might "soon have to decide if there is a constitutional obligation to preserve forensic evidence that might later be tested." *Id.* at 74.

14

needed in the context of postconviction relief." *Id.* Therefore, the State only fails to provide adequate process under the Due Process Clause of the Fourteenth Amendment if its procedures for postconviction relief "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (citation omitted). A state's procedures for postconviction relief can also violate the Due Process Clause if they "transgress[ ] any recognized principle of fundamental fairness in operation." *Id.* (quoting *Medina v. California*, 505 U.S. 437, 448 (1992)). Washington, however, bears the burden of demonstrating the procedural inadequacy of Maryland's postconviction DNA testing statute. *See id.* at 71. In determining whether the statute meets this standard, it is helpful to review how courts have applied it to other states' postconviction relief procedures.

In *Osborne*, the Supreme Court upheld Alaska's procedures for postconviction relief under this standard. *Id.* at 69–70. An Alaska statute provided for relief if the defendant made a "clear and convincing" showing of new evidence—including new DNA analysis—establishing innocence. *Id.* at 64 (quoting Alaska Stat. § 12.72.020(b)(2) (2004)). The new evidence must have been newly available, diligently pursued, and sufficiently material for the court to consider granting relief. *Id.* at 70 (citing § 12.72.020(b)(2)). Additionally, Alaska courts recognized a right to DNA testing under the state constitution when (1) a defendant's conviction rested primarily on eyewitness identification, (2) there was demonstrable doubt as to the defendant's guilt, and (3) DNA evidence "would likely be conclusive" on the issue. *Id.* at 65 (quoting *Osborne v. State*, 110 P.3d 986, 995 (Alaska Ct. App. 2005)). Because these procedures exempted petitioners from otherwise applicable

15

time limits for filing for relief, provided for discovery in postconviction proceedings, and were "similar to those provided for DNA evidence by federal law and the law of other [s]tates, see, e.g., 18 U.S.C. § 3600(a)," the Supreme Court held that they were "not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Osborne*, 557 U.S. at 70 (citation omitted).

Similarly, in *McKithen v. Brown*, 626 F.3d 143 (2d Cir. 2010), the United States Court of Appeals for the Second Circuit held that New York's postconviction relief statute was adequate to protect a convicted criminal defendant's limited liberty interest in demonstrating his innocence with new evidence. *Id.* at 154. To obtain relief under New York's statute, a defendant must show that had the DNA testing been performed for use at trial, "there exists a *reasonable probability* that the verdict would have been more favorable to the [petitioner]." *Id.* at 153 (quoting N.Y. Crim. Proc. Law § 440.30(1–a(a)) (1994)). Comparing New York's statute to Alaska's, the court reasoned that this standard was less stringent than Alaska's requirement that DNA evidence would "clearly and convincingly" or "conclusively" establish the petitioner's innocence. *Id.* at 153–54. Therefore, it concluded, New York's statute neither offended principles of justice nor was fundamentally unfair. *Id.*

In *Morrison v. Peterson*, 809 F.3d 1059 (9th Cir. 2015), the United States Court of Appeals for the Ninth Circuit upheld two aspects of California's postconviction DNA statute under the *Osborne* standard. *Id.* at 1069. It held that neither the statute's reasonable probability requirement—like New York's—nor its chain of custody provision violated the Due Process Clause. *Id.* The court rejected the petitioner's argument that California's

16

reasonable probability requirement was more stringent than Alaska's requirement that the new evidence be material or "conclusive." *Id.* at 1068–69. California's postconviction DNA statute also requires petitioners to show that "[t]he evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect." *Id.* at 1069 (quoting Cal. Penal Code § 1405(f)(2) (West 2005)). Because a petitioner might make a prima facie showing of lack of tampering by pointing to the State's duty to preserve all biological evidence related to a criminal case, the court concluded that this requirement did not "transgress[ ] any recognized principle of fundamental fairness in operation." *Id.* (quoting *Osborne*, 557 U.S. at 69).

The United States Court of Appeals for the Eleventh Circuit used the same comparative approach in *Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237 (11th Cir. 2010), to uphold Alabama's postconviction DNA testing statute under the Due Process Clause. *Id.* at 1263 ("Alabama's procedures pass muster if they compare favorably with Alaska's."). The court observed that both Alabama and Alaska allow a defendant to initiate postconviction proceedings when he can show newly discovered material facts that require that his conviction be vacated. *Id.* Furthermore, it found that in one respect Alabama's procedures were more petitioner-friendly than Alaska's. To obtain a new trial, Alaska requires the petitioner to demonstrate innocence by clear and convincing evidence, while Alabama only requires a preponderance of the evidence. *Id.* at 1263–64. Therefore, the court concluded that the statute's procedures met the constitutional standard.

17

Maryland offers individuals convicted of designated crimes a robust process by which to seek postconviction DNA testing, and its procedures overlap significantly with those found to be constitutionally adequate by other courts. Like New York's statute, Maryland's postconviction DNA law directs courts to order DNA testing if "a **reasonable probability** exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing." CP § 8-201(d)(1)(i) (emphasis added). Like the Alaska statute at issue in *Osborne*, there is no time period within which a petitioner must file a petition for postconviction testing. *Compare* CP § 8-201(b), *with* Alaska Stat. § 12.72.020. Furthermore, CP § 8-201 does not require petitioners to swear under oath that they are actually innocent, which makes relief more accessible than the federal DNA postconviction statute. *Compare* CP § 8-201, *with* 18 U.S.C. § 3600(a)(1) (2012). The statute also gives courts the broad authority to grant a new trial due to postconviction DNA test results whenever doing so is "in the interest of justice." CP § 8-201(i)(3). Lastly, the statute gives petitioners the right of direct appeal to this Court. CP § 8-201(k)(6). These procedures are neither offensive to our traditional principles of justice nor fundamentally unfair.

Although no court has specifically addressed a state's limitation on access to DNA testing based on the petitioner's type of crime under the Due Process Clause, we do not consider this aspect of the Maryland statute to deprive Washington of due process.[12] The

---

[12] Including Maryland, 27 states allow only individuals convicted of certain crimes to access postconviction DNA testing. *See, e.g.*, Alaska Stat. § 12.73.010 (2014) (limiting petitions for testing to individuals "convicted of a felony against a person"); S.C. Code Ann. § 17-28-30 (2014) (limiting petitions for testing to 24 enumerated crimes, including

18

Legislature has made a policy determination as to when the severity of an individual's conviction and the relevance of new DNA evidence outweighs the administrative costs of preserving DNA evidence and producing it on demand. This Court sees no reason to disturb that determination, even if the law allowed us to do so.

In making our decision, we bear in mind that, in addition to relief available under the Maryland Uniform Postconviction Procedure Act, Md. Code (2001, 2008 Repl. Vol., 2013 Supp.) §§ 7-101 through 7-109, persons convicted of "a crime triable in circuit court" may also at any time, file a "petition for writ of actual innocence" if the person claims that there is newly discovered evidence that "creates a substantial or significant possibility that the result may have been different." CP § 8-301(a)(1) (2009, 2008 Repl. Vol., 2016 Supp.). Additionally, Washington had the opportunity to obtain DNA testing of the evidence against him at the time of his trial, and he failed to do so. Therefore, we decline to hold that Maryland's postconviction DNA testing procedures are constitutionally inadequate to protect Washington's limited liberty interest in postconviction relief.

---

murder, criminal sexual conduct, and armed robbery); Ky. Rev. Stat. Ann. § 422.285 (LexisNexis 2005, 2016 Supp.) (limiting petitions for testing to individuals convicted of a capital offense, a Class A or B felony, or 10 other enumerated crimes); *see also* National Conference of State Legislatures, Post Conviction DNA Testing (2013), http://www.ncsl.org/Documents/cj/PostConvictionDNATesting.pdf [https://perma.cc/3DED-Q3E9].

We also decline to hold that Article 24 of the Maryland Declaration of Rights[13] grants individuals who have been convicted of a crime a due process right to DNA testing. Generally, we have interpreted Article 24 to apply "in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution." *Attorney General v. Waldron*, 289 Md. 683, 704 (1981) (citation omitted). Indeed, when applying Article 24, "decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities."[14] *Id.* at 705 (citation omitted). We have only interpreted Article 24 more broadly than the Fourteenth Amendment when "fundamental fairness demanded that we do so." *Borchardt v. State*, 367 Md. 91, 175 (2001) (Raker, J., dissenting); *see, e.g.*, *Koshko v. Haining*, 398 Md. 404, 444 (2007) (grandparent visitation statute violated Maryland Constitution regardless of Supreme Court case law); *Hook v. State*, 315 Md. 25, 43–44 (1989) (permitting the prosecution to *nol pros* a lesser included offense was "fundamentally unfair under Maryland common law"). We decline to do so here. Accordingly, we hold that CP § 8-201 does not violate Article 24 when it denies individuals convicted of conspiracy to commit murder access to postconviction DNA testing.

---

[13] Article 24 of the Maryland Declaration of Rights provides:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

[14] Applying this rule, under *Osborne*, Article 24 also does not give rise to a substantive due process right to postconviction DNA testing.

## Equal Protection Clause

Washington next argues that Maryland's postconviction DNA testing statute violates the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights. Under the Equal Protection Clause, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). Washington contends that because the State has granted those convicted of first-degree murder and attempted first-degree murder the right to petition for postconviction DNA testing, it denies him the equal protection of the law when it excludes a person convicted of conspiracy to commit murder who has been sentenced to life from that remedy. We disagree.

Because Washington's claim neither implicates a fundamental right nor a suspect class, we apply a rational basis standard in evaluating the State's classification.[15] *See Plyler*

---

[15] In *Osborne*, the Supreme Court rejected the existence of a substantive due process right to access postconviction DNA testing. *Dist. Atty's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009). As a result, access to this relief also does not constitute a fundamental right under the Constitution. In addition to those explicitly listed in the Constitution, the Supreme Court has only recognized the following rights as fundamental under the Due Process Clause: the right to marry, the right to have children and direct their upbringing, the right to marital privacy, the right to use contraception, the right to bodily integrity, and the right to abortion. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Supreme Court has also strongly suggested that there is a fundamental due process right to refuse lifesaving medical treatment. *Cruzan ex. rel. Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) ("The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions.").

*v. Doe*, 457 U.S. 202, 216–17 (1982); *Neifert v. Dep't of Env't*, 395 Md. 486, 505 (2006). To prove an equal protection clause violation under this standard, Washington must demonstrate that (1) the State treated him differently from a similarly situated individual, and (2) the distinction was not rationally related to any legitimate state interest. *Neifert*, 395 Md. at 506.

Washington argues that individuals convicted of first-degree murder or attempted first-degree murder are similarly situated to him because he is subject to the same sentence of life imprisonment. Washington relies on the Kansas Supreme Court decision *State v. Cheeks*, 310 P.3d 346 (Kan. 2013), for this assertion. In *Cheeks*, the court held that the state's postconviction DNA testing statute violated the Equal Protection Clause because it allowed individuals convicted of first-degree murder the opportunity to petition for postconviction DNA testing, but denied that opportunity to those convicted of second-degree murder who were sentenced to the same maximum of 15 years to life. *Id.* at 354. The court reasoned that due to the identical length of their sentences, the two groups were similarly situated for the purpose of the law, which was to "provide an opportunity for exoneration to innocent individuals convicted of severe crimes." *Id.* at 352. The Kansas court observed that premeditation—the element that distinguishes first-degree from second-degree murder—was not relevant to the purpose of the statute, so it did not deem the petitioner differently situated. *Id.* It explained that "the relevant trait for [its] similarly situated analysis [was] the sentence imposed by the district court and not the elements of the crimes." *Id.* The court further held that Kansas had no rational basis for its distinction between these similarly situated individuals. *Id.* at 354.

Kansas's postconviction DNA statute is readily distinguishable from Maryland's. In *Cheeks*, Kansas differentiated between individuals convicted of two crimes bearing the same likelihood that the perpetrator would leave traces of DNA—they both require physical presence. This is not so with conspiracy. Moreover, denying individuals convicted of second-degree murder access to postconviction DNA testing ran contrary to the Kansas statute's stated purpose of providing an opportunity for exoneration to those convicted of severe crimes, which certainly includes second-degree murder. Maryland's statute does not suffer from these flaws. Therefore, we decline to adopt the sentence-focused approach of the Kansas Supreme Court, and instead focus on the nature of the crimes at issue.

Unlike first-degree murder or attempted first-degree murder, Washington's conviction of conspiracy to commit murder does not generally require physical presence at the scene of the underlying crime. Thus, including conspiracy within the postconviction DNA testing statute would not further the purpose of the law, which is to give access to DNA testing when DNA evidence is most likely to remedy a wrongful conviction. To commit conspiracy, the law only requires an individual to have entered into an agreement with another to commit a crime, and to have actually intended for the crime to be committed. *Salzman v. State*, 49 Md. App. 25, 54 (1981). This "meeting of the minds" could take place in person, over the phone, or through the Internet. *See id.* (citation omitted). First-degree murder and attempted first-degree murder, on the other hand, both require an individual to take physical action—either the murder itself or an overt act towards the completion of the murder. CR § 2-201; *State v. Holmes*, 310 Md. 260, 271–

23

72 (1987). Because conspiracy to commit murder does not require physical presence, individuals convicted of first-degree murder and attempted first-degree murder are not similarly situated to Washington. As a result, the State does not violate the Equal Protection Clause when it distinguishes between them.

Even if Washington were similarly situated to individuals convicted of first-degree murder or attempted first-degree murder, he still bears the burden of proving that the law is not rationally related to any legitimate State interest. *Heller v. Doe ex. rel. Doe*, 509 U.S. 312, 320 (1993) (citation omitted). Under rational basis review, a statute is presumed constitutional and will be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns Inc.*, 508 U.S. 307, 313 (1993). Washington advances three reasons to support his argument that the State has no rational basis for its distinction. We will address each in turn.

First, Washington claims that the State is under the same obligation to preserve scientific evidence whether an individual is convicted of conspiracy to commit murder, attempted first-degree murder, or first-degree murder. This is not so. As discussed *supra*, under CP § 8-201(j)(1), the State is only required to preserve scientific evidence when (1) it "has reason to know [the evidence] contains DNA material" and (2) the defendant is convicted of first-degree murder, second-degree murder, manslaughter, first-degree rape, or other sexual offenses. CP § 8-201 imposes no statutory obligation on the State to preserve DNA evidence related to a conspiracy to commit murder.

Second, Washington argues that there is no rational basis to give access to postconviction DNA testing to those convicted of attempted first-degree murder under the

24

statute, while denying access to those convicted of conspiracy to commit murder—another inchoate crime. Unlike attempted first-degree murder, the crime of conspiracy to commit murder does not require the defendant to take any physical action towards the commission of a murder. In fact, there is no requirement that the murder have been attempted at all. Therefore, it is rational for the State to conclude that DNA evidence related to a crime that requires some physical presence is more likely to exonerate an individual than DNA evidence related to a crime that can be completed through a mere conversation.

Even though some conspirators may leave traces of DNA in the physical location where they reach mental agreement—meeting in a particular room, for example—that does not mean the State's distinction fails under rational basis review. We have explained that "a classification having some reasonable basis need not be made with mathematical nicety and may result in some inequality." *Whiting-Turner Contracting Co. v. Coupard*, 304 Md. 340, 352 (1985). Additionally, "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams*, 397 U.S. 471, 486–87 (1970) (citation omitted). Thus, it is rational for the State to work to remedy wrongful convictions by providing access to postconviction DNA testing in cases where the testing is most likely to exonerate.

Lastly, Washington contends that fiscal concerns do not provide a rational basis for the statutory distinction because the statute requires petitioners to pay for the DNA testing. This argument is unpersuasive because the State is not focused on the cost of conducting the DNA testing. Rather, it seeks to avoid the administrative costs of allowing an additional class of individuals access to the petition process. Allowing those convicted of conspiracy

25

to petition for postconviction DNA testing requires the State to preserve evidence from these crimes and increases the judicial and prosecutorial resources spent on addressing petitions under the statute. These fiscal concerns constitute a rational basis for the State to distinguish among similarly situated individuals. *See Dandridge*, 397 U.S. at 486–87 (Maryland had a rational basis for its welfare scheme when it decided how to best allocate limited funds.); *Jefferson v. Hackney*, 406 U.S. 535, 549 (1972) ("[B]udgetary constraints" provided a rational basis for distinction between welfare recipients.).

In short, Washington has failed to negate the State's rationale for excluding those convicted of conspiracy to commit murder from access to postconviction DNA testing. Accordingly, Maryland has a rational basis for allowing individuals convicted of first-degree murder and attempted first-degree murder to petition for postconviction DNA testing, while disallowing those convicted of conspiracy to commit murder from doing so. Therefore, the postconviction DNA testing statute does not violate the Equal Protection Clause.

Because the Maryland Constitution does not otherwise have language establishing equal protection of the laws, it is well settled that Article 24 should be interpreted to encompass this concept. *Waldron*, 289 Md. at 704. As with the Due Process Clause, Article 24 is applied in a "like manner and to the same extent" as the Equal Protection Clause of the Fourteenth Amendment. *Id.* (citation omitted). Accordingly, Washington's equal protection claim under the Maryland Constitution also fails.

**CONCLUSION**

Because conspiracy to commit murder is not a petition-eligible offense under CP § 8-201, Washington does not have standing to request DNA testing. In addition, the postconviction DNA statute survives Washington's constitutional challenges. Thus, we affirm the Circuit Court's order dismissing Washington's petition.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**