**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 15-7668

DEREK STANTON LAMAR,

            Plaintiff – Appellant,

      v.

PAUL EBERT, Esq.,

            Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Henry Coke Morgan Jr., Senior District Judge.  (2:12-cv-00706-HCM-TEM)

Argued:  December 6, 2016                     Decided:  March 17, 2017

Before KING, SHEDD, and FLOYD, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED**: Philip Joseph Levitz, COVINGTON & BURLING LLP, Washington, D.C., for Appellant.   Philip Corliss Krone, Alexander Francuzenko, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellee.  **ON BRIEF**: Mark W. Mosier, COVINGTON & BURLING LLP, Washington, D.C., for Appellant.  Broderick C. Dunn, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 1998, Derek Stanton LaMar was convicted of rape in the Circuit Court of Prince William County, Virginia. In 2001, Virginia enacted a statute that authorizes DNA testing of human biological evidence under certain circumstances (the "DNA statute"). LaMar thereafter filed four unsuccessful petitions seeking such testing. In 2012, LaMar filed his pro se complaint in this case in federal court in Virginia. He therein alleged a claim under 42 U.S.C. § 1983 against Paul Ebert, Esq., the Commonwealth's Attorney for Prince William County, contending, inter alia, that the DNA statute is unconstitutional under the Due Process Clause of the Fourteenth Amendment. Upon screening LaMar's complaint pursuant to 28 U.S.C. § 1915A, the district court concluded that the complaint is barred by the *Rooker-Feldman* doctrine and, alternatively, that it fails to state a claim upon which relief can be granted.[1] Accordingly, the court dismissed the complaint. LaMar contests the dismissal by way of this appeal, and Ebert argues for the first time that LaMar lacks standing to pursue his § 1983 claim. As explained below, we reject Ebert's contention on standing, conclude that the dismissal was erroneous, and vacate and remand.

---

[1] The *Rooker-Feldman* doctrine is derived from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Application of the doctrine bars a party who has lost in state court from seeking direct review in federal district court.

I.

A.

On July 13, 1998, a Virginia jury convicted LaMar of a rape offense. The state circuit court sentenced LaMar to life in prison with all but twenty-three years suspended. LaMar appealed, and the Court of Appeals of Virginia affirmed in September 2000. In 2004, LaMar filed a petition seeking a writ of actual innocence from the Supreme Court of Virginia, which was refused.

In 2001, Virginia enacted the DNA statute, which authorizes a convicted person to seek, under the proper circumstances, "a new scientific investigation of any human biological evidence related to the case that resulted in the felony conviction." *See* Va. Code § 19.2-327.1(A). Specifically, the person must satisfy the five-part test specified in the DNA statute:

[1]  the evidence was not known or available at the time the conviction . . . became final in the circuit court or the evidence was not previously subjected to testing because the testing procedure was not available at the Department of Forensic Science at the time the conviction . . . became final in the circuit court;

[2]  the evidence is subject to a chain of custody sufficient to establish that the evidence has not been altered, tampered with, or substituted in any way;

[3]  the testing is materially relevant, noncumulative, and necessary and may prove the actual innocence of the convicted person . . .;

[4]  the testing requested involves a scientific method employed by the Department of Forensic Science; and

[5]  the person convicted . . . has not unreasonably delayed the filing of the petition after the evidence or the test for the evidence became available at the Department of Forensic Science.

3

*Id.* § 19.2-327.1(A)(i)-(v); *see also id.* § 19.2-327.1(D) (requiring clear and convincing evidence). The convicted person must also "assert categorically and with specificity, under oath, the facts to support" each of the statutory requirements, as well as "the reason or reasons the evidence was not known or tested by the time the conviction . . . became final in the circuit court" and "the reason or reasons that the newly discovered or untested evidence may prove the actual innocence of the person convicted." *Id.* § 19.2-327.1(B). Virginia does not authorize a proceeding under the DNA statute to "form the basis for relief in any habeas corpus proceeding or any other appeal." *Id.* § 19.2-327.1(G).

LaMar has sought relief under the DNA statute in state court on four occasions. First, shortly after Virginia enacted the statute in 2001, LaMar sought to utilize short tandem repeat DNA testing — which Virginia had adopted after his trial — to test biological evidence. On October 23, 2001, the state circuit court denied LaMar's initial petition because it had not been filed under oath, failed to specifically allege facts required by statute, did not seek to have newly discovered or previously untested scientific evidence tested, and sought to relitigate the trial court's decisions on chain of custody and admissibility issues.

In 2003, LaMar again requested DNA testing in state court, as well as an injunction requiring Virginia to preserve evidence. LaMar sought to have tests performed on hairs recovered from the crime scene, sanitary napkins from the Physical Evidence Recovery Kit, and his blood. On June 2, 2003, the state circuit court denied LaMar's second petition for DNA testing but granted his request for an injunction. The court concluded that LaMar had failed to show how DNA testing would be relevant,

4

noncumulative, and necessary to prove actual innocence; failed to establish that the evidence had not been tested previously; and failed to show that he had not unreasonably delayed filing his second petition. LaMar sought to appeal that decision to the Supreme Court of Virginia, which dismissed for lack of jurisdiction.

In 2008, LaMar filed a petition seeking rehearing of his previous requests for DNA testing because the Virginia Department of Forensic Science had begun using mitochondrial DNA testing. Mitochondrial DNA testing can obtain a DNA profile from hair without fleshy roots — like the hair LaMar sought to have tested. On November 6, 2008, the state circuit court denied the third petition, finding it duplicative. At some point thereafter, LaMar filed his fourth petition in state court for DNA testing, which was denied on March 3, 2011. On May 21, 2014, however, the state court extended its injunction requiring preservation of the biological evidence for ten years.

## B.

On August 16, 2012, LaMar filed his complaint in the Western District of Virginia pursuant to 42 U.S.C. § 1983. LaMar's complaint alleges deprivation of his Fourteenth Amendment right to due process and seeks declaratory, injunctive, and monetary relief. The complaint alleges that the DNA statute is unconstitutional and that Commonwealth's Attorney Ebert's refusal to allow testing of the biological evidence contravenes LaMar's due process interests. On December 26, 2012, LaMar's suit was transferred to the Eastern District of Virginia.

Almost a year later, on December 17, 2013, Ebert filed a motion seeking dismissal of the complaint. Ebert maintained that the statute of limitations bars LaMar's claim, that

5

Ebert is entitled to absolute prosecutorial immunity, and that LaMar's complaint fails to state a claim upon which relief can be granted because Ebert is the incorrect defendant. The district court denied Ebert's motion in part, ruling that LaMar had timely filed his complaint and named the proper defendant. *See LaMar v. Ebert*, No. 2:12-cv-00706 (E.D. Va. Sept. 24, 2014), ECF No. 56. The court also determined that Ebert — acting in his capacity as Virginia's prosecutor — is absolutely immune from liability for damages. Accordingly, the court granted Ebert's dismissal motion as to the damages aspect of the complaint.

On May 19, 2015, Ebert sought summary judgment on the balance of LaMar's complaint, contending that the district court should abstain under the *Younger* doctrine and that, in any event, the § 1983 claim failed on the merits.[2] In early September 2015, the court denied Ebert's summary judgment motion, but nevertheless dismissed LaMar's complaint *sua sponte*, pursuant to 28 U.S.C. § 1915A, for failure to state a claim. *See LaMar v. Ebert*, No. 2:12-cv-00706 (E.D. Va. Sept. 8, 2015), ECF No. 72 (the "Dismissal Order").[3] In denying Ebert's summary judgment motion, the Dismissal Order ruled that the *Younger* doctrine does not apply because there is no judicial proceeding pending in

---

[2] The *Younger* doctrine provides that a federal court must abstain from interfering in an ongoing state criminal prosecution. *See Younger v. Harris*, 401 U.S. 37, 41 (1971).

[3] Pursuant to § 1915A of Title 28, a federal court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A(a). In conducting that review, the court is obligated to dismiss the complaint, in whole or in part, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b)(1).

6

state court. The court also determined that LaMar has raised a procedural due process claim that is cognizable under the principles of *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 69-72 (2009) (explaining that convicted person could, in proper circumstances, pursue procedural due process claim seeking DNA testing of crime scene evidence). The court then screened LaMar's complaint pursuant to § 1915A, concluding that the *Rooker-Feldman* doctrine bars LaMar's complaint because he is "actually attempting to challenge the [state circuit court's] rulings on his various [petitions] for scientific testing." *See* Dismissal Order 9. The Dismissal Order ruled, however, that even if the *Rooker-Feldman* doctrine is inapplicable, LaMar's complaint fails to state a claim because he has misread the DNA statute.

LaMar timely noted this appeal, and we thereafter appointed counsel to represent him. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's dismissal of a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A. *See Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005). A court is not entitled to dismiss a complaint under § 1915A unless, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id.* When a dismissal issue under § 1915A implicates a civil rights complaint, however, "we must be especially solicitous of the wrongs alleged and

7

must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.*

III.

On appeal, Ebert contends — for the first time — that LaMar lacks standing to litigate this matter in federal court. For his part, LaMar asserts that the *Rooker-Feldman* doctrine does not bar his constitutional challenge to the DNA statute and that his complaint alleges a plausible due process claim.

A.

We first assess Ebert's contention that LaMar lacks standing to challenge the constitutionality of the DNA statute. Standing "is a jurisdictional issue of constitutional dimensions" that "may be raised and addressed for the first time on appeal." *See Hodges v. Abraham*, 300 F.3d 432, 443 (4th Cir. 2002).

1.

Article III of the Constitution of the United States limits the jurisdiction of the federal courts to "Cases" and "Controversies." *See* U.S. Const. art. III, § 2. The "core component" of standing, as the Supreme Court has emphasized, is "an essential and unchanging part" of Article III's case-or-controversy requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At its "irreducible constitutional minimum," the issue of standing includes three requirements:

8

(1)     that the plaintiff suffer an injury-in-fact — "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical";

(2)     "a causal connection between the injury and the conduct complained of," meaning that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and

(3)     that it is likely — rather than speculative — that the injury be "redressed by a favorable decision."

*Id.* at 560-61.

As the Supreme Court has explained, the party invoking federal jurisdiction — such as LaMar — "bears the burden of establishing these elements." *See Lujan*, 504 U.S. at 561. However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.*

2.

a.

First, Ebert contends that LaMar's complaint fails to allege any injury stemming from the alleged unconstitutionality of the DNA statute. The complaint maintains that the statute "prohibits [LaMar] from any sort of Habeas Corpus relief." *See* Compl. ¶ 25. The complaint further alleges that — despite repeated requests for DNA testing — LaMar's lack of access to DNA evidence "has deprived [him] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence." *Id.* ¶ 24. It is somewhat difficult to understand what more

9

could be required of LaMar. *See Lujan*, 504 U.S. at 561-62 ("When the suit is one challenging the legality of government action or inaction . . . [and] the plaintiff is himself an object of the action (or forgone action) at issue," then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."). In short, LaMar alleges in his complaint that the DNA statute is unconstitutional and otherwise that the statute has deprived him of access to DNA testing that might result in the reversal of his conviction. In these circumstances, we are satisfied that LaMar has pleaded adequate facts in his pro se complaint to fulfill the injury-in-fact requirement.

b.

Second, Ebert contends that LaMar cannot satisfy the causation requirement of standing because any injury suffered by him is not fairly traceable to Ebert.[4] According to Ebert, his only involvement in any convicted person's quest to obtain DNA testing occurs after a state circuit court has ordered him to file a response to a petition under the DNA statute. In that respect, Ebert argues, this matter markedly differs from the Supreme Court's decision in *Skinner v. Switzer*, 562 U.S. 521 (2011), where the petitioner had sued his prosecutor and sought § 1983 relief under a Texas statute that was similar to the DNA statute.

---

[4] On appeal, Ebert rehashes his district court contention — first voiced by an unsuccessful motion to dismiss — that he is an improper defendant to a constitutional challenge of the DNA statute. Although Ebert now recasts that allegation as a standing challenge, it is yet meritless.

10

In the *Skinner* case, of course, neither the Supreme Court nor the parties had questioned the petitioner's standing. Nevertheless, we are unable to see how the Texas statute materially differs — with regard to our standing analysis — from Virginia's DNA statute. In Texas, a court can require the state's attorney to respond to a petition for DNA testing by delivering the evidence or explaining why it cannot be delivered. *See* Tex. Code Crim. Proc. Ann. art. 64.02(a)(2). But the court can order DNA testing "regardless of whether the attorney representing the state [has] submitted a response." *Id.* art. 64.02(b). The Texas statute's requirement thus mirrors that of Virginia's DNA statute, which provides that the Commonwealth "shall" respond to the petition within thirty days of receipt of service. *See* Va. Code § 19.2-327.1(C).

Under either statute (Texas or Virginia), the prosecutor is obligated to respond to a request for DNA testing; Ebert's argument to the contrary thus identifies a distinction without a difference. Perhaps that is why no court — including the Supreme Court — has either identified or assessed a standing issue when the convicted person has sued a prosecutor for denial of access to post-conviction DNA testing. *See, e.g.*, *Skinner*, 562 U.S. at 529 (suing district attorney); *Osborne*, 557 U.S. at 60 (same); *Cooper v. Ramos*, 704 F.3d 772, 776 (9th Cir. 2012) (same); *Alvarez v. Att'y. Gen. for the State of Fla.*, 679 F.3d 1257, 1259 (11th Cir. 2012) (suing state's attorney and attorney general); *Harvey v. Horan*, 278 F.3d 370, 374 (4th Cir. 2002) (suing Commonwealth's Attorney), *abrogated on other grounds by Skinner*, 562 U.S. at 524-25.

Importantly, Ebert has not denied that he is the public official with custody of the DNA evidence LaMar seeks to have tested. Despite Ebert's suggestion at oral argument

11

that the Department of Forensics is the proper defendant because it acts as custodian of the evidence, the Department of Forensics provides a service to Ebert (the Commonwealth's Attorney), not the other way around. *See* Va. Code § 9.1-1101(A). That Ebert is but one of several persons or entities in charge of implementing the DNA statute is not controlling. *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 315-16 (4th Cir. 2013); *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 757 (4th Cir. 2013) (explaining that plaintiff alleged sufficient causation for standing as to defendant police superintendent who merely implemented sex offender registry created by state statute). LaMar's complaint is replete with allegations that Ebert has refused to allow LaMar access to evidence for DNA testing. We are therefore satisfied that LaMar's complaint fulfills *Lujan*'s causation requirement.

c.

Finally, we briefly address the redressability requirement, which Ebert has not challenged. In his complaint, LaMar alleges that his lack of access to DNA testing has prevented him from using "state procedures to obtain reversal of his conviction," a pardon, or a sentence reduction. *See* Compl. ¶ 24. He seeks, in relevant part, an injunction requiring Ebert to test DNA evidence under the most advanced and best testing procedures available. A judgment in LaMar's favor would confer the relief he requests. His complaint therefore adequately pleads facts that suffice to support redressability. In these circumstances, LaMar possesses standing to pursue his § 1983 claim against Ebert.

12

## B.

We now turn to LaMar's first contention in this appeal: that the district court improperly ruled that the *Rooker-Feldman* doctrine bars his claim. Ebert maintains that the district court "correctly applied the *Rooker-Feldman* doctrine insofar as LaMar alleged that Ebert's alleged refusal to allow LaMar access to DNA testing deprived [him] of his due process rights" because LaMar's allegations "are inseparable from the state court adjudication." *See* Br. of Appellee 10. According to Ebert, had the court granted LaMar § 1983 relief, it would have "nullified" the state circuit court's decisions denying LaMar's repeated requests for DNA testing. *Id.* at 11.

### 1.

The *Rooker-Feldman* doctrine bars the lower federal courts, "with the exception of habeas corpus actions, from sit[ting] in direct review of state court decisions." *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 199 (4th Cir. 1997). In other words, *Rooker-Feldman* prevents a losing party in state court from "complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." *See Skinner*, 562 U.S. at 531. *Rooker-Feldman*'s jurisdictional bar "extends not only to constitutional claims presented to or adjudicated by the state courts but also to claims that are inextricably intertwined with a state court judgment." *See Jordahl*, 122 F.3d at 199. If the *Rooker-Feldman* doctrine bars review, a federal court can consider neither "adjudications of the state's highest court" nor "decisions of its lower courts." *Id.* The "controlling question" under the *Rooker-Feldman* doctrine is "whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of

13

that state court decision." *Id.* at 202. The *Rooker-Feldman* doctrine is a "narrow" rule that the Supreme Court has applied "only twice, . . . in the two cases from which the doctrine takes its name." *See Skinner*, 562 U.S. at 531.

Importantly, a federal plaintiff "encounters no *Rooker-Feldman* shoal" when presenting an independent claim, even if "the same or a related question was earlier aired between the parties in state court." *See Skinner*, 562 U.S. at 532. In *Skinner*, the Supreme Court differentiated between challenges to the state court's decision itself and challenges to the constitutionality of the state statute as construed by that court. *Id.* at 532. Because Skinner had challenged the constitutionality of the Texas DNA statute — rather than the state court's decision denying his petition for DNA testing — Skinner was in the latter category. *Id.* at 532-33. The Supreme Court therefore determined that there was "no lack of subject-matter jurisdiction over Skinner's federal suit." *Id.* at 533.

### 2.

The district court ruled that the *Rooker-Feldman* doctrine bars LaMar's complaint because he is "actually attempting to challenge the [state circuit court's] rulings on his various [petitions] for scientific testing." *See* Dismissal Order 9. Although the district court recognized that LaMar alleged a denial of his due process interests, the court deemed it significant that LaMar "emphasize[d] how the [state circuit court] allegedly wrongfully applied the statute to his situation." *Id.* In that respect, the district court erred.

LaMar directs his attack at the constitutionality of Virginia's DNA statute — not at the state court decisions that denied him access to DNA testing. LaMar's complaint

14

includes factual allegations regarding his repeated attempts to obtain testing under the DNA statute. His claim, however, is prominently labelled "Deprivation of Right to Due Process." *See* Compl. 7. The complaint specifically alleges that the DNA statute "is an unconstitutional statute that was created to allow a convicted felon to have newly discovered or previously untested biological evidence tested, however, . . . subsection (G) of this statute prohibits [LaMar] from any sort of Habeas Corpus relief." *Id.* ¶ 25.

Moreover, the complaint alleges that the "denial of access to this evidence has deprived [LaMar] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence." *See* Compl. ¶ 24. This phraseology mirrors — in a strikingly similar way — the allegations of Skinner's complaint. *See Skinner*, 562 U.S. at 530 (quoting Skinner's Fourteenth Amendment due process claim as alleging that Texas's refusal to test DNA evidence "has deprived [Skinner] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence"). The Supreme Court deemed Skinner's allegations adequate to defeat application of the *Rooker-Feldman* doctrine, ruling that "Skinner does not challenge the adverse [lower court] decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed." *Id.* at 532. In light of *Skinner*'s explicit approval of the nearly identical allegations, we are unable to say that LaMar's complaint asks "the federal district court to review a state court decision and thus pass upon the merits of that state court decision." *See Jordahl*, 122 F.3d at 202. Rather, as in *Skinner*, LaMar is challenging the

15

constitutionality of the DNA statute. We will therefore vacate the ruling that the *Rooker-Feldman* doctrine constitutes a fatal bar to LaMar's complaint.

C.

Finally, we address LaMar's contention that the district court's alternative ruling concerning § 1915A was erroneous. The court determined that LaMar is alleging a procedural due process claim, but declined to grant Ebert summary judgment thereon. *See* Dismissal Order 7-8. Nonetheless, the court ruled that LaMar has failed to state a claim because subsection (G) of the DNA statute "does not prohibit [LaMar] from seeking any type of habeas relief." *Id.* at 10. The court therefore concluded that LaMar's complaint "offers no allegations as to why [the DNA statute] is constitutionally infirm." *Id.*

The Supreme Court has recognized a limited liberty interest in utilizing state procedures to obtain post-conviction DNA testing. *See Osborne*, 557 U.S. at 68. When a state has created a right to DNA testing — as Virginia does in its DNA statute — that "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *See id.* We agree with the district court that LaMar has pleaded a procedural due process claim pursuant to *Osborne*. We disagree, however, that the allegations in LaMar's complaint are insufficient in that regard.

The district court's conclusion that LaMar "has misread subsection (G)" of the DNA statute contravenes the plain language thereof. Subsection (G), in its entirety, provides:

16

An action under this section or the performance of any attorney representing the petitioner under this section *shall not form the basis for relief in any habeas corpus proceeding or any other appeal.* Nothing in this section shall create any cause of action for damages against the Commonwealth or any of its political subdivisions or any officers, employees, or agents of the Commonwealth or its political subdivisions.

Va. Code § 19.2-327.1(G) (emphasis added). Even if that statutory language is somehow unclear, the Supreme Court of Virginia has confirmed that subsection (G) "unambiguous[ly] . . . means that circuit court proceedings under [the DNA statute] are not subject to review in this Court, whether by direct appeal or a petition for writ of habeas corpus." *See Harvey v. Warden of Coffeewood Corr. Ctr.*, 597 S.E.2d 58, 59 (Va. 2004). The district court's conclusion that subsection (G) does not bar LaMar from seeking "any type of habeas relief" misses the point. LaMar challenges the constitutionality of the DNA statute because he cannot obtain relief — through either a direct appeal or habeas corpus — even if he obtained favorable DNA results under the statute. That LaMar may secure habeas corpus relief for some other reason would likely be of little comfort.

More importantly, the district court assessed LaMar's complaint to some extent on its merits. Although LaMar is represented by counsel on appeal, he was proceeding pro se in the district court. His complaint thus should have been read liberally and not dismissed for failure to state a claim unless it appeared beyond doubt that he could "prove no set of facts . . . which would entitle him to relief." *See Hughes v. Rowe*, 449 U.S. 5, 10 (1980). The district court, however, mistakenly placed the burden on LaMar to conclusively "demonstrate the inadequacy of the state-law procedures available to him

17

in state postconviction relief." *See* Dismissal Order 10 (quoting *Osborne*, 557 U.S. at 71).

We are satisfied that LaMar's pro se complaint pleaded sufficient facts to survive dismissal pursuant to § 1915A. LaMar asserts that, although Virginia has created a pathway to obtain DNA testing, it has restricted that pathway by refusing to afford a successful plaintiff habeas corpus relief. *See* Compl. ¶ 25. LaMar has requested DNA testing of certain untested evidence, including hair recovered from the crime scene, but the state circuit court has not permitted him to test that evidence. Furthermore, LaMar requested re-testing of certain biological evidence "that was previously tested under an antiquated testing procedure," to no avail. *Id.* ¶ 26. According to LaMar, the state court's denial of those requests "deprived [him] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence." *Id.* ¶ 24. Although perhaps not "a model of the careful drafter's art," LaMar's complaint provides a "plausible short and plain statement" of his claim. *See Skinner*, 562 U.S. at 530. That is all the law requires at this stage. Thus, although we express no view on the merits, we are satisfied that LaMar has pleaded enough to stave off dismissal.[5]

---

[5] LaMar also maintains that the district court erred by screening his complaint pursuant to § 1915A — which requires screening "as soon as practicable after docketing" — more than three years after he filed the complaint. Although we agree that a three-year delay "exceeds any understanding of as soon as practicable," *see Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012), we need not decide whether that delay — standing alone — entitles LaMar to relief because the court otherwise erred in dismissing his complaint.

IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*