**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6417

DEREK STANTON LAMAR,

        Plaintiff - Appellant,

    v.

PAUL EBERT, Esq.,

        Defendant - Appellee,

    and

MARK R. HERRING, Attorney General of Virginia,

        Intervenor - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry Coke Morgan, Jr., Senior District Judge. (2:12-cv-00706-HCM-RJK)

Argued: November 1, 2018                 Decided: November 30, 2018

Before KING, FLOYD, and THACKER, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** Jack Matthew Zugay, COVINGTON & BURLING, LLP, Washington, D.C., for Appellant. Michelle Shane Kallen, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Elliott Schulder,

COVINGTON & BURLING LLP, Washington, D.C., for Appellant.  Mark R. Herring, Attorney General, Victoria N. Pearson, Deputy Attorney General, Matthew P. Dullaghan, Senior Assistant Attorney General, Toby J. Heytens, Solicitor General, Matthew R. McGuire, Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee Mark R. Herring.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This matter is before us for the second time. In this appeal, Derek LaMar ("Appellant") challenges the district court's grant of summary judgment to defendant Commonwealth Attorney Paul Ebert and intervenor Attorney General of Virginia, Mark Herring (collectively, "Appellees"). In its order, the district court rejected Appellant's argument that he was unconstitutionally denied access to modern DNA testing to prove actual innocence of a rape conviction.

Virginia law permits an individual convicted of a felony to seek postconviction DNA testing of biological evidence related to his case under certain circumstances. *See* Va. Code Ann. § 19.2–327.1(A), (D) (the "DNA Statute"). Appellant contends the DNA Statute violates his right to procedural due process for two reasons: it bars retesting of biological evidence using more accurate methods; and it requires the convicted individual to prove five items -- including that the evidence was subject to a sufficient chain of custody -- by clear and convincing evidence without an opportunity for discovery. Thus, Appellant contends, the DNA Statute essentially nullifies the right it purports to confer.

As explained below, the district court failed to apply the proper legal standard set forth in *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52 (2009), to Appellant's procedural due process claim. Therefore, we reverse the district court's judgment and remand for further proceedings.

I.

A.

<u>Background</u>

On July 13, 1998, Appellant was convicted in Virginia state court of rape, a crime he denies committing. At trial, prosecutors introduced a DNA analysis of a sperm sample taken from a sanitary napkin the victim was wearing. According to that analysis, the DNA profile from the sample was "consistent with the DNA profile of [Appellant]." J.A. 107.[1]

Appellant was sentenced to life in prison, with all but 23 years suspended. The Court of Appeals of Virginia affirmed his conviction in September 2000. In 2001, Virginia enacted the DNA Statute, which authorizes a convicted individual to seek "a new scientific investigation of any human biological evidence related to the case that resulted in the felony conviction." Va. Code Ann. § 19.2–327.1(A). However, that individual must first prove each of the following by clear and convincing evidence:

> (i) the evidence was not known or available at the time the conviction . . . became final in the circuit court or the evidence was not previously subjected to testing because the testing procedure was not available at the Department of Forensic Science at the time the conviction . . . became final in the circuit court;
>
> (ii) the evidence is subject to a chain of custody sufficient to establish that the evidence has not been altered, tampered with, or substituted in any way;

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

(iii) the testing is materially relevant, noncumulative, and necessary and may prove the actual innocence of the convicted person . . .;

(iv) the testing requested involves a scientific method employed by the Department of Forensic Science; and

(v) the person convicted . . . has not unreasonably delayed the filing of the petition after the evidence or the test for the evidence became available at the Department of Forensic Science.

*Id.* § 19.2–327.1(A)(i)–(v); *see also id.* § 19.2–327.1(D) (requiring proof by clear and convincing evidence). The individual must also

"assert categorically and with specificity, under oath, the facts to support" each of the statutory requirements, as well as "the reason or reasons the evidence was not known or tested by the time the conviction . . . became final in the circuit court" and "the reason or reasons that the newly discovered or untested evidence may prove the actual innocence of the person convicted." [Va. Code Ann.] § 19.2–327.1(B). Virginia does not authorize a proceeding under the DNA statute to "form the basis for relief in any habeas corpus proceeding or any other appeal." *Id.* § 19.2–327.1(G).

*LaMar v. Ebert*, 681 F. App'x 279, 282 (4th Cir. 2017).

B.

State Court Proceedings

Pursuant to the DNA Statute, Appellant made multiple state level requests for retesting of the sanitary napkin using new and advanced testing methods. In 2001, he sought to use short tandem repeat ("STR") DNA testing, an "extremely discriminating" testing method, *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 60 n.3 (2009). However, the state court denied this request because*, inter alia*, Appellant

5

did not "request scientific analysis of *newly discovered or previously untested* scientific evidence." J.A. 37 (emphasis supplied).

In 2003, Appellant filed yet another motion seeking retesting of the sanitary napkin and his own blood. The state court again rejected his request, explaining that Appellant, inter alia, "failed to establish that the requested evidence was not previously subject to testing." J.A. 89. The following year, Appellant filed a petition seeking a writ of actual innocence based on the same evidence, but the Virginia Supreme Court refused the petition. Appellant filed two more petitions for retesting, in 2008 and 2011, both of which were denied.[2] Nonetheless, the state court granted Appellant's request for an injunction requiring preservation of the biological evidence for ten years. *See LaMar*, 681 F. App'x at 282–83.

## C.

### Federal Court Proceedings

On August 16, 2012, Appellant filed the instant action in district court pursuant to 42 U.S.C. § 1983. The complaint alleges the DNA Statute is unconstitutional because it "prohibits [Appellant] from any sort of Habeas Corpus relief," even if testing were

---

[2] In 2008, Appellant sought to use mitochondrial DNA testing, which can obtain "a DNA profile from hair without fleshy roots," to test pubic hair that was not able to be tested previously. *LaMar*, 681 F. App'x at 282. Appellant does not make a constitutional claim with regard to this evidence.

6

successful, *see* Va. Code Ann. § 19.2–327.1(G);[3] and because the "denial of access" to the biological evidence for testing "deprived [Appellant] of his liberty interests in utilizing state procedures to obtain reversal of his conviction." J.A. 21. Appellant requested a declaration "that Defendant Ebert violated [his] Fourteenth Amendment" due process rights; a declaration that the DNA Statute "is in violation of the Fourteenth Amendment[]" right to due process; and an "injunction requiring that [Ebert] be responsible for . . . retesting, under the newest DNA testing procedure available, the previously tested biological evidence in question." *Id*. at 22.[4]

The district court dismissed Appellant's complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A, but this court reversed and remanded. In so doing, we explained that in *Osborne*, "[t]he Supreme Court . . . recognized a limited liberty interest in utilizing state procedures to obtain post-conviction DNA testing." *LaMar*, 681 F. App'x at 288. Moreover, "[w]hen a state has created a right to DNA testing -- as Virginia does in its DNA statute -- that 'state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.'" *Id*. (quoting *Osborne*, 557 U.S. at 68). We also concluded that Appellant sufficiently "pleaded a procedural due process claim pursuant to *Osborne*" because he "requested re-

---

[3] "An action under this section or the performance of any attorney representing the petitioner under this section shall not form the basis for relief in any habeas corpus proceeding or any other appeal." Va. Code Ann. § 19.2–327.1(G).

[4] Appellant originally sought money damages, but later abandoned that request for relief. *See* Motion and Order, *LaMar v. Ebert*, No. 2:12-cv-706 (E.D. Va. filed Sept. 24, 2012 and Oct. 19, 2012), ECF Nos. 10, 15.

7

testing of certain biological evidence that was previously tested under an antiquated testing procedure, to no avail." *Id.* at 288–89 (internal quotation marks omitted).

Upon remand, Appellant, Ebert, and Herring each filed motions for summary judgment. Appellant contended that the DNA Statute "sets the standard for postconviction DNA testing so high that it nullifies the right the statute purports to confer," thereby violating his procedural due process rights. Br. Supp. Mot. Summ. J., *LaMar v. Ebert*, No. 2:12-cv-706 (E.D. Va. filed Aug. 21, 2017), ECF No. 124, at 1. He asserted that the DNA Statute "creates a protected interest in demonstrating one's innocence with new testing methods and exonerating evidence"; however, "[t]he procedures set forth in the [DNA Statute]," i.e., failure to allow retesting under modern methods and requiring the plaintiff to prove statutory requirements by clear and convincing evidence, "are fundamentally inadequate to vindicate the substantive right created." *Id.* at 4–7.

The district court granted summary judgment to Appellees and denied the same to Appellant. As to the procedural due process claim,[5] the district court accused Appellant of "alter[ing] his theories of why the DNA statute is unconstitutional." J.A. 149. The district court claimed Appellant "assert[ed] new claims by raising them in his brief in opposition to [the] motions for summary judgment." *Id.*

---

[5] The district court also rejected Appellant's claim regarding subsection (G), but Appellant makes no specific challenge to that ruling in his opening brief. *See A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 369 (4th Cir. 2008) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." (emphasis and internal quotation marks omitted)).

Nonetheless, the district court purported to consider, and ultimately reject, these "new claims." The district court interpreted Appellant's procedural due process argument to be based on the following "premise": "[I]f there is a DNA testing statute, it must provide *all inmates*, including [Appellant], with an avenue to allow DNA testing and retesting." J.A. 150 (emphasis supplied). The court then characterized this argument as "attempting to create a substantive right to access biological evidence for DNA testing" and rejected it, explaining, "Not every inmate is eligible to access the state's evidence for testing because they do not meet the limits put on access by the state." *Id*. at 151 (citing *Osborne*, 557 U.S. at 56). Appellant timely filed this appeal.

## II.

"We review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to the nonmoving party." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326 (4th Cir. 2018) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. (quoting Fed. R. Civ. P. 56(a)).

III.

A.

Legal Standard

Appellant's procedural due process claim[6] required application of a legal standard the district court did not employ. Appellant contends the DNA Statute does not permit him to secure retesting of evidence that was previously tested under "an antiquated testing procedure," and that the DNA Statute does not have "procedures sufficient to . . . permit[] plaintiffs to conduct discovery so as to meet the heightened evidentiary requirements." Appellant's Br. 10, 21. Thus, he claims the DNA Statute is "fundamentally inadequate" and "sets the standard for postconviction DNA testing so high that it nullifies the right the statute purports to confer," thereby violating procedural due process rights under the Fourteenth Amendment. *Id*. at 22, 12.

Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). To succeed on such a claim, a plaintiff must demonstrate: (1) "he had a constitutionally cognizable life, liberty, or property interest";

---

[6] We disagree with the district court that Appellant asserted "new claims" in summary judgment briefing. J.A. 149. To the contrary, an *Osborne* procedural due process claim was properly raised and sufficiently pled in the pro se complaint, which we made clear in our prior opinion in this case. *See LaMar v. Ebert*, 681 F. App'x 279, 288–89 (4th Cir. 2017).

(2) "the deprivation of that interest was caused by some form of state action"; and (3) "the procedures employed were constitutionally inadequate." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (internal quotation marks omitted).

1.

Liberty Interest

In *Osborne*, the Supreme Court explained that William Osborne, who was convicted of kidnapping, assault, and sexual assault and sought DNA testing of crime scene evidence, had "a liberty interest in demonstrating his innocence with new evidence under state law," because Alaska law provided that those who use newly discovered evidence to establish they are innocent may obtain vacatur of their conviction. 557 U.S. at 68. Further, the Court recognized this "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Id*. (internal quotation marks omitted).

As Appellant points out, "[t]he district court did not explicitly determine whether or not the Virginia statute grants [Appellant] a liberty interest in testing potentially exonerating biological evidence." Appellant's Br. 19. Further, it did not determine what "other rights to procedures essential to the realization of th[at]" alleged liberty interest must flow from the DNA Statute. *Osborne*, 557 U.S. at 68.

2.

State Action

There is no dispute in this appeal that the Commonwealth Attorney, a state actor, refused to perform retesting of Appellant's evidence. *See* Appellees' Br. 19 (stating that

11

the deprivation of the liberty interest must be "caused by some sort of state action" (internal quotation marks omitted)); *see generally id*. at 20–30 (declining to counter Appellant's argument that this element is met); *see also* Oral Argument at 18:20–19:14, *LaMar v. Ebert*, No. 18–6417 (4th Cir. Nov. 1, 2018) (counsel for Appellee Herring, when asked why the Commonwealth has not tested Appellant's evidence, answering, "The harm to the Commonwealth [in performing the testing] extends far beyond just [Appellant]" because of an interest in finality of convictions and a current backlog of thousands of rape kits).

3.

Constitutionally Inadequate

To be sure, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68. In such circumstances, "'[t]he State . . . has more flexibility in deciding what procedures are needed in the context of postconviction relief,'" and "due process does not 'dictate the exact form' of post-conviction assistance a State must provide." *Morrison v. Peterson*, 809 F.3d 1059, 1065 (9th Cir. 2015) (quoting *Osborne*, 557 U.S. at 68–69) (alteration omitted). In such a situation, the Supreme Court set forth the following inquiry:

> [T]he question is whether consideration of [the convicted individual]'s claim within the framework of the State's procedures for postconviction relief "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized principle of fundamental fairness in operation."

*Osborne*, 557 U.S. at 69 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)).

12

Thus, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.*

Rather than applying this legal standard and addressing whether the requirements set forth in the DNA Statute are fundamentally inadequate to vindicate the very right the law provides, the district court disposed of Appellant's claim by addressing whether Appellant *satisfied* those allegedly unconstitutional requirements. *See* J.A. 150 (explaining that the chain of custody requirement does not violate Appellant's due process rights because it "is easily established"); *id.* at 151 (explaining that testing may be available "if *newly discovered* biological evidence comes to light" (emphasis supplied)).

The district court also erroneously interpreted Appellant's argument as "attempting to create a *substantive* right to access biological evidence for DNA testing." J.A. 150 (emphasis supplied). The court believed Appellant was arguing that "if there is a DNA testing statute, it must provide *all inmates*, including [Appellant], with an avenue to allow DNA testing and retesting." *Id.* (emphasis supplied). It further stated, "Not every inmate is eligible to access the state's evidence for testing because they do not meet the limits put on access by the state." *Id.* at 151. However, Appellant's argument is a procedural one, i.e., that these "limits" in the statute render the right to DNA testing hollow. Appellant does not advocate for recognition of a substantive due process right to DNA testing, *see* Appellant's Br. 21, nor could he, *see Osborne*, 557 U.S. at 72 (declining to recognize "a freestanding [substantive due process] right to DNA evidence untethered from the liberty interest[]" of demonstrating one's innocence under state law).

B.

Proper Remedy

The district court failed to apply the proper legal standard to Appellant's procedural due process claim. "When a judgment has been predicated on an erroneous legal standard, the proper remedy is usually to remand for a determination under the appropriate standard." *Cardall*, 826 F.3d at 743 (internal quotation marks omitted). Therefore, pursuant to the framework set forth above, we once again remand to the district court to properly analyze Appellant's procedural due process claim. We express no opinion on the merits of this argument.

IV.

We reverse the district court's grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*